UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Seth Bader

     v.                                        Civil No. 02-cv-508-JD
                                             Opinion No. 2005 DNH 103
Warden, New Hampshire
State Prison


O R D E R


     Seth Bader seeks habeas corpus relief pursuant to 28 U.S.C.
§ 2254 from his conviction and sentence for the murder of his
former wife, Vicki Bader.  Summary judgment has been granted in
the Warden's favor on four of the five issues Bader raised,
leaving only the issue of whether the prosecution, knowingly or
with reckless indifference to the truth, tolerated perjury by
Sandro Stuto in his testimony against Bader in the criminal
trial.  The Warden moves for summary judgment on that issue.
Bader objects to summary judgment and moves for an evidentiary
hearing on the Stuto issue.  Bader also moves to stay his case
while he litigates a new claim of ineffective assistance of
counsel in state court.


I.  Bader's Motion for a Hearing

     Bader's criminal defense counsel learned a few weeks after
Bader was convicted that during the trial, Sandro Stuto, a

prosecution witness, told a fellow prison inmate known as John Doe that his trial testimony against Bader was false.  In August of 1999, Doe signed an affidavit in which he explained the circumstances of Stuto's recantation.  Doe stated that he had immediately told his lawyer, Philip Cross, about Stuto's statements.  While he was representing Doe, Cross was also serving as guardian ad litem for Bader's sons, Joseph, Matt, and Sam, during Bader's criminal trial.

Based on Doe's story that Stuto recanted his testimony, Bader claims that the prosecution, knowingly or with reckless indifference to the truth, tolerated perjury by Stuto.  Bader was allowed additional discovery on that issue in this proceeding, and his counsel deposed Philip Cross and the prosecutors in Bader's criminal case, John Kacavas and Joseph LaPlante.  The depositions provide no evidence that Kacavas or LaPlante knew of a recantation by Stuto during the trial or otherwise knew that Stuto's testimony was false, as Bader contends.

Bader now seeks an evidentiary hearing to question Philip Cross about his discussions with his client, John Doe, asserting that Cross is a state actor and that his knowledge is imputable to the prosecution.  He contends that Cross improperly invoked attorney-client privilege during his deposition when he was asked

about his conversations with Doe.[1]  He also asserts that "the
flagrant untruthfulness of the prosecutors about a variety of
material issues should be explored at an evidentiary hearing."
Motion at 10.  Bader argues that the prosecutors are not credible
and that their statements during their depositions should not be
taken as true.  The Warden has provided only a cursory objection
to Bader's motion.

In cases under the Antiterrorism and Effective Death Penalty
Act ("AEDPA"), if a habeas petitioner has failed to develop the
factual basis of his claim in state court, meaning that the
record was not developed due to a lack of due diligence, he must
satisfy § 2254(e)(2) before he would be entitled to an
evidentiary hearing.  Holland v. Jackson, 124 S. Ct. 2736, 2738
(2004); Williams v. Taylor, 529 U.S. 420, 431-37 (2000); Lopez v.
Massachusetts, 349 F. Supp. 2d 109, 124-25 (D. Mass. 2004).  If
the facts were not developed in state court through no fault of
the petitioner, then § 2254(e)(2) does not apply.  Holland, 124
S. Ct. at 2738; Lopez, 349 F. Supp. 2d at 125.  AEDPA provides no
guidance as to when a hearing may or must be held when §
2254(e)(2) does not apply.

---

[1]Bader, who is represented by counsel, did not move to
compel Cross's testimony or otherwise challenge his use of
attorney-client privilege.

Pre-AEDPA, <u>Townsend v. Sain</u>, 372 U.S. 293, 313 (1963),[2] which was codified in § 2254(d), along with Rule 8 of the Rules Governing Habeas Corpus Cases Under Section 2254, governed the availability of an evidentiary hearing in habeas cases.  <u>See</u> <u>Lonchar v. Thomas</u>, 517 U.S. 314, 326 (1996); <u>Thompson v. Keohane</u>, 516 U.S. 99, 107-09 (1995).  The First Circuit stated in a post-AEDPA case that <u>Townsend</u> "guides federal habeas courts in determining when it is necessary to hold evidentiary hearings in habeas cases." <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 9 (1st Cir. 2001).

Other courts have held that when § 2254(e)(2) does not apply, the pre-AEDPA standard provided in <u>Townsend</u> and Rule 8 governs.[3] <u>See, e.g.</u>, <u>Conner v. Polk</u>, 407 F.3d 198, 208 (4th Cir. 2005); <u>Isyxiengmay v. Morgan</u>, 403 F.3d 657, 670 (9th Cir. 2005); <u>Guidry v. Dretke</u>, 397 F.3d 306, 322-24 (5th Cir. 2005); <u>Davis v. Lambert</u>, 388 F.3d 1052, 1061-62 (7th Cir. 2004); <u>Lopez</u>, 349 F. Supp. 2d at 125; <u>Martinez v. Spencer</u>, 195 F. Supp. 2d 284, 291 (D. Mass. 2002).  The reasoning of those courts is persuasive, particularly in light of the First Circuit's statement in <u>Sanna</u>.

---

[2]<u>Townsend</u> was partially overruled by <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 11-12 (1992), on other grounds.

[3]The Third Circuit has held, however, that the <u>Townsend</u> standard does not apply in post-AEDPA cases and while the district court is permitted to hold a hearing, if it is not precluded by § 2254(e)(2), no hearing is required.  <u>Campbell v. Vaughn</u>, 209 F.3d 280, 286-87 (3d Cir. 2000).

4

A. § 2254(e)(2)

On appeal to the New Hampshire Supreme Court, Bader claimed that the newly discovered evidence of Stuto's recantation required that he be granted a new trial, in part, because under Napue v. Illinois, 360 U.S. 264 (1959), "federal due process is violated if a State knowingly uses false evidence, including false testimony, to obtain a tainted conviction, regardless that the false testimony goes only to the credibility of the witness." State v. Bader, 148 N.H. 265, 283 (2002).  That court addressed Bader's federal claim but noted that it was assuming without deciding that he had preserved the claim in the lower court.  Id. at 284.  There is no indication in that case or the state court record that Bader raised a claim or attempted to develop the factual basis for a claim that the prosecution recklessly as opposed to knowingly used false testimony at his criminal trial.

The Warden, however, does not contend that Bader failed to raise or develop the factual basis for either claim in state court.  Therefore, the court will assume that the restrictions of § 2254(e)(2) do not apply to this claim.  See, e.g., Conner, 407 F.3d at 208.

B.   Townsend Standard

A federal court may grant an evidentiary hearing if "an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief."  Townsend, 372 U.S. at 312; accord LePage v. Picard, 495 F.2d 26, 29 (1st Cir. 1974); Dias v. Maloney, 156 F. Supp. 2d 104, 124 (D. Mass. 2001).  A habeas applicant is entitled to an evidentiary hearing if he persuasively demonstrates one or more of the following factors:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Townsend, 371 U.S. at 313.  The court need not grant a hearing, however, based on merely frivolous or incredible allegations. See id. at 317; see also Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Further, a hearing need not always be conducted in person, but instead a "paper hearing" may be sufficient.  Oken v. Warden, MSP, 233 F.3d 86, 94 (1st Cir. 2000).

Bader alleges that the prosecutors either knew that Stuto's testimony at his trial was false or were recklessly indifferent

6

to whether it was true.  In his motion for an evidentiary
hearing, Bader is not clear as to whether he is asking to call
Kacavas and LaPlante to testify at a hearing.  He states only
that their deposition testimony was untruthful and that their
credibility should be considered to be doubtful.  Because Bader's
counsel has deposed Kacavas and LaPlante and those deposition
transcripts are part of the record in this case, Bader has not
shown that any further evidentiary development is necessary with
respect to those witnesses.  Based on the present record, Bader's
allegations against Kacavas and LaPlante are simply frivolous.[4]

    Bader apparently acknowledges the difficulty of showing
that the prosecutors knowingly used false testimony and instead
focuses on Cross's knowledge of Stuto's alleged recantation.  He
contends that Cross knew that Stuto had recanted his trial
testimony during the trial and argues that his knowledge should
be imputed to the prosecutors.  He asks for an evidentiary

---

[4]Bader contends that he is entitled to an inference under
the missing witness rule that if Stuto had been produced for
deposition, as Bader requested, Stuto would have given testimony
that was adverse to the Warden's position.  See Bogosian v.
Woloohojian Realty Corp., 323 F.3d 55, 67 (1st Cir. 2003).
Because Bader has not established the elements necessary for that
inference, the court declines to consider it.  See Grajales-
Romero v. Am. Airlines, Inc., 194 F.3d 288, 297-98 (1st Cir.
1999) (party seeking application of rule must show that witness
favorably disposed to testify for party and that witness was
peculiarly available to that party).

hearing to inquire, without the attorney-client privilege that
Cross invoked at his deposition, about what Cross learned from
his client, John Doe, during Bader's trial.  Even if his
allegations were true that Doe told Cross during Bader's trial
that Stuto had recanted his testimony, however, that knowledge
cannot be imputed to the prosecutors.

Prosecutors are charged with knowledge of information "known
to those acting on the government's behalf."  United States v.
Bender, 304 F.3d 161, 164 (1st Cir. 2002).  That group includes
other members of the prosecution team and police investigators
working for the prosecution.  Id.  Prosecutors are not
accountable, however, for information known to other government
agencies, such as the Division of Children, Youth, and Families,
who are not working with the prosecution.  See, e.g., Lavallee v.
Coplan, 374 F.3d 41, 44 (1st Cir. 2004) (discussing traditional
Brady doctrine and acknowledging court review requirement under
Pennsylvania v. Richie, 480 U.S. 39 (1987)).

During Bader's criminal trial, Philip Cross was the guardian
ad litem for Joseph Bader and his two brothers.  Under New
Hampshire law, a guardian ad litem may be appointed by the court
to represent the interests of a minor in a court proceeding and
to act in the minor's best interests.  N.H. Rev. Stat. Ann. §
464-A:41; In re Guardianship of Henderson, 150 N.H. 349, 350

(2003).  As a guardian ad litem, Cross was acting on behalf of
Joseph Bader, and his brothers, not on behalf of the government
or the prosecution.  Therefore, even if Bader were able to
establish that Cross knew of Stuto's alleged recantation during
his criminal trial, Cross's knowledge is not imputable to the
prosecutors.

Because an evidentiary hearing is neither required nor
appropriate in this case, Bader's motion is denied.

II.   The Warden's Motion for Summary Judgment

The Warden moves for summary judgment on Bader's remaining
claim that the prosecution, knowingly or with reckless
indifference to the truth, tolerated perjury by Sandro Stuto in
his testimony against Bader at the criminal trial.  The Warden
argues that the state court decision was neither an unreasonable
application of Supreme Court precedent nor based on an
unreasonable determination of the facts.  See 28 U.S.C. §
2254(d).  Bader contends that Philip Cross's knowledge about
Stuto's recantation is imputable to the prosecutors and that the
prosecutors were recklessly indifferent to the truth of Stuto's
testimony because they did not investigate Stuto's credibility
after he changed his story about his participation in the burial
of Vicki Bader's body.

A.  Knowing Use

As is discussed above, Philip Cross's knowledge about
Stuto's alleged recantation of his trial testimony is not
imputable to the prosecutors in Bader's criminal case.  The New
Hampshire Supreme Court affirmed the trial court's finding that
there was no basis for a conclusion that the prosecution
knowingly presented false testimony in Bader's case.  Bader, 148
N.H. at 284-85.  Bader offers no new evidence or even an argument
that Kacavas or LaPlante knowingly used false testimony from
Stuto.  Therefore, no material factual issue exists as to the
prosecution's knowing use of false testimony by Stuto.


B.  Reckless Use

Bader also argues that the prosecutors' reckless use of
false testimony violated his due process rights.[5]  Because the
state courts did not address that issue, if it was presented to
them at all, that claim is reviewed under a de novo standard.
See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).  The
standard in § 2254(d) does not apply to this part of Bader's
claim.  See Newell v. Hanks, 335 F.3d 629, 631 (7th Cir. 2003).

---

[5]Bader does not claim a due process violation based on the
prosecution's innocent use of false testimony.  See, e.g.,Ortega
v. Duncan, 333 F.3d 102, 106 (2d Cir. 2003); United States v.
Tierney, 947 F.2d 854, 860 (8th Cir. 1991).

"First, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue, 360 U.S. at 269.  Courts have interpreted United States v. Agurs, 427 U.S. 97, 101 (1976), and Mooney v. Holohan, 294 U.S. 103, 112 (1935), to hold that the prosecution also violates due process if it solicits testimony from a government witness that it should have known was false or allows such testimony to stand uncorrected if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  See Lambert v. Blackwell, 387 F.3d 210, 242 (3d Cir. 2004); Martin v. Evans, 384 F.3d 848, 855 (7th Cir. 2004); Drake v. Portuondo, 321 F.3d 338, 344-45 (2d Cir. 2003); United States v. Ellis, 121 F.3d 908, 927 (4th Cir. 1997); Ouimette v. Moran, 942 F.2d 1, 11 (1st Cir. 1991); United States v. Flaherty, 668 F.2d 566, 587 (1st Cir. 1981); Zeigler v. Callahan, 659 F.2d 254, 264 (1st Cir. 1981).  To prove such a claim, the petitioner must show that the government witness's testimony was false, that the prosecution should have known of its falsity, and that the false testimony was material under the Agurs standard.  See Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005); Simental v. Matrisciano, 363 F.3d 607, 615 (7th Cir. 2004); Drake, 321 F.3d at 345.

11

     1.  Falsity

The Warden contends that Stuto's trial testimony was truthful.  Bader relies on Doe's story that Stuto said his trial testimony was not true and that, contrary to that testimony, Bader had nothing to do with his ex-wife's murder.  Stuto has not testified under oath about his alleged recantation.

Recantations of trial testimony are viewed with skepticism and suspicion.  See Hysler v. Florida, 315 U.S. 411, 413 (1942); United States v. Rouse, --- F.3d ---, 2005 WL 1340791 at *3 (8th Cir. June 8, 2005); Mendiola v. Schomig, 224 F.3d 589, 593 (7th Cir. 2000); United States v. DiPaolo, 835 F.2d 46, 49 (2d Cir. 1987).  Recantations that are inconsistent with other trial testimony, when the original testimony was consistent, are particularly unreliable.  Allen v. Woodford, 395 F.3d 979, 994 (9th Cir. 2005).  "No inference of government knowledge of perjury arises from the mere fact of a convict's hearsay report that a material witness recanted testimony."  United States v. Gonzalez-Gonzalez, 258 F.3d 16, 23 (1st Cir. 2001).

The state court found that Stuto's alleged recantation was not of "such a character that it would likely produce a different result at trial" because it was inconsistent with Stuto's and Joseph's trial testimony, which were credible.  Bader, 148 N.H. at 283-84.  Given the source of the recantation and the state

court's determination of its credibility, Bader has not
demonstrated a material factual issue as to whether Stuto's trial
testimony was false.

      2. Should Have Known

     Although courts recognize the "should have known" element of
the Agurs standard, the contours of that standard are not well-
developed.  See Drake, 321 F.3d at 345.  The Eighth Circuit found
the standard was met when the government told defense counsel
that the witness had no arrest record, without actually
completing a background check, and the witness testified,
falsely, that he had never been arrested.  United States v. Duke,
50 F.3d 571, 577-78 (8th Cir. 1995).

     Bader attempts to meet the Agurs standard by drawing
improbable inferences from a mistake in the police report of
Stuto's statement about the circumstances of Vicki Bader's
murder.  The police report stated that Stuto helped to bury
Vicki's body after the murder.  Stuto pointed out before trial
that the statement was a mistake and reiterated that he did not
help to bury the body.  The mistake was thoroughly examined at
the time of the trial.  The prosecutors' conduct in that regard
does not suggest reckless disregard for the truth of Stuto's
testimony.  Bader has not shown that the prosecutors were either

recklessly indifferent to the truth or that they should have known that Stuto's testimony that he did not help bury the body was false.

Because Bader has not demonstrated a material factual dispute as to whether the prosecutors knew that Stuto's trial testimony was false or were recklessly indifferent to the truth, the Warden is entitled to summary judgment on that claim.

III.  Bader's Motion for a Stay

Bader states that "[a] new issue has recently arisen in this habeas proceeding" and seeks a stay to allow him to exhaust that claim in state court.  Motion ¶ 1.  Bader contends that Joseph was motivated to implicate him and to please Vicki Bader's family, rather than to testify truthfully, because of his financial interest in the wrongful death action brought by Vicki's estate against Bader.[6]  The new issue Bader raises is

---

[6]Bader represents that the tort case brought against him by Vicki Bader's estate, Buzby v. Bader, 97-E138, 97-C-352 (Rockingham County Sup. Ct.), concluded in April of 2003 when the Rockingham County Superior Court granted partial summary judgment in favor of the estate but, at Bader's urging, delayed a decision on damages.  In November of 2004, after a hearing, the court awarded the estate more than four million dollars in damages in November of 2004.  He explains that the issue of Joseph's financial motive did not occur to him until he heard an interview with Vicki's mother after the damages award in which she said that she intended to give Joseph Bader a share of the money the estate collects.

14

whether his criminal defense counsel were constitutionally ineffective due to their failure to impeach Joseph by asking him about a bias or a motive to lie arising from his contingent interest in Vicki's estate's suit.  Once again, the Warden provides only a cursory objection and failed to seek leave to file a response to Bader's reply memorandum.

The First Circuit has required district courts to stay a federal habeas proceeding when dismissal of a mixed petition "could jeopardize the petitioner's ability to obtain federal review."  Nowaczyk v. Warden, 299 F.3d 69, 79 (1st Cir. 2002). Recently, the Supreme Court held that "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Rhines v. Weber, 125 S. Ct. 1528, 1535 (2005).  In addition, stay and abeyance is not appropriate if the unexhausted claims are plainly meritless.  Id.  A district court must grant a stay "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Id.  If a stay is granted, it should not be allowed to continue indefinitely.  Id.

15

The stay and abeyance procedure is intended to protect a petitioner in appropriate circumstances from having his federal claims become time barred by the one-year limitations period, 28 U.S.C. § 2244(d), while he completes the state exhaustion process.  Pace v. DiGuglielmo, 125 S. Ct. 1807, 1813 (2005). Because Rose v. Lundy, 455 U.S. 509 (1982), requires dismissal of mixed habeas petitions and the one-year time limit is tolled only during the pendency of a "properly filed application" for relief in state court, a petitioner's federal claims could become time-barred after a mixed petition was dismissed.  Rhines, 125 S. Ct. at 1533-34.  Under Rhines, the petitioner is allowed in appropriate circumstances to file a "protective" petition in federal court to preserve the timeliness of both exhausted and unexhausted claims.  Pace, 125 S. Ct. at 1813.

Bader did not allege the ineffective assistance claim in his petition, so he has not filed a "protective" or mixed petition in this proceeding nor has he sought leave to amend to add the claim.  Instead, he proceeded on five exhausted claims, which have all been resolved in favor of the Warden.  He represents that he has filed a habeas petition in Merrimack County Superior Court, in which he raised the ineffective assistance of counsel issue.  Because Bader has not made a "protective" filing in this case, the circumstances here do not fit the situation addressed

16

in <u>Rhines</u>.

In addition, the one-year limitation period provided by §
2244(d)(1) appears to have expired in December of 2003. Although
this case was filed within that limitation period, Bader's new
claim would be untimely unless Bader is able to demonstrate that
tolling of the limitation period or relation back to the original
filing date would be appropriate here. <u>See</u> § 2244(d); <u>Mayle v.
Felix</u>, --- S. Ct. ---, 2005 WL 1469153, *6-*11 (U.S. June 23,
2005). If the claim is untimely, as it appears, a stay would not
serve the purpose articulated in <u>Rhines</u>.

To the extent the court would have discretion to grant a
stay, although a stay would not be required under <u>Rhines</u>, the
court would decline to do so. If the lack of a protective filing
and the question of the timeliness of the claim would not
preclude the stay and abeyance procedure, Bader would still not
be entitled to a stay unless he can satisfy the <u>Rhines</u>
requirements.

A.  <u>Good Cause</u>

Good cause for filing unexhausted claims in federal court
may exist because of the petitioner's reasonable confusion about
whether his unexhausted claims are time barred in state court.
<u>Pace</u>, 125 S. Ct. at 1813. That circumstance does not apply in

17

this case.  The meaning of "good cause" in this context has not otherwise been developed through case law, although cause has been addressed as part of the showing requried to excuse procedural default.  <u>See</u>, <u>e.g.</u>, <u>Evicci v. Maloney</u>, 387 F.3d 37, 40 (1st Cir. 2004).  In that context, the petitioner must show "'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" <u>Horton v. Allen</u>, 370 F.3d 75, 81 (1st Cir. 2004) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).

Bader contends that his former counsel are to blame for not raising the ineffective assistance of counsel claim sooner, although he provides no detail as to which counsel should have raised the claim.  In essence, he argues that he received ineffective assistance of counsel in proceedings after his trial that resulted in the failure to raise and exhaust the ineffective assistance claim before this proceeding began.  Ineffective assistance of counsel may be used to establish cause to excuse a state procedural default.  <u>See Gunter v. Maloney</u>, 291 F.3d 74, 81 (1st Cir. 2002).

If a petitioner intends to use ineffective assistance as cause, however, that claim too must be exhausted in the state courts.  <u>Id.</u>  Bader has not presented a claim in state court that his subsequent counsel were constitutionally ineffective for

18

failing to raise the issue of his trial counsel's ineffective assistance.  Therefore, ineffective assistance by subsequent counsel cannot constitute cause here because that claim has not been exhausted.

Bader has not clearly presented any other basis for finding good cause to excuse his failure to exhaust the ineffective assistance of counsel claim.  Therefore, he has not satisfied the first requirement under Rhines for a stay.

### B.  Merit

A stay is also not appropriate if the new claim is plainly meritless.  Rhines, 125 S. Ct. at 1535.  As is noted above, the claim appears to be barred by the statute of limitations, § 2244(d), and would likely be meritless on that ground.

In addition, to prove his claim of ineffective assistance of counsel, Bader must prove "first, trial counsel's performance [was] deficient in some way sufficiently substantial to deny him effective representation; and second, that deficiency . . . result[ed] in prejudice, defined as a 'reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different.'"  Epsom v. Hall, 330 F.3d 49, 52 (1st Cir. 2003) (quoting Strickland v. Washington,, 466 U.S. 668, 687 (1984)).  Counsel's performance is constitutionally deficient if

19

it "fell measurably below that which might be expected from an
ordinary fallible lawyer." Castillo v. Matesanz, 348 F.3d 1, 11
(1st Cir. 2003).

Bader argues that his former counsel were constitutionally
ineffective for failing to impeach Joseph's credibility with the
issue of his financial interest in Vicki Bader's estate's civil
suit against Bader. At the same time, however, Bader contends
that he and his present counsel did not realize the credibility
issue existed until he heard in a news interview in November of
2004 that Joseph would receive a share of the estate's damages
award. He also argues that neither he nor his counsel realized
that an ineffective claim existed until the Warden argued that
the credibility issue arising from the civil suit was not
exhausted and was not based on new evidence.[7] Bader offers no

---

[7]In February of 2005, Bader filed a motion to set aside
judgment on the issue of whether the state had a secret deal with
Joseph Bader, contending that developments in the estate's civil
suit against him raised a new issue about Joseph's credibility at
his criminal trial based on his financial interest in the outcome
of the civil suit. Bader argued that the discretion of the
prosecutors not to enforce "the slayer rule" against Joseph,
which would prevent him from receiving part of Vicki's estate,
induced Joseph to testify for the prosecution and against Bader.
The Warden responded that the new issue about Joseph's
credibility had not been exhausted, among other objections.
Bader states that he and his present counsel then first realized
that he had a claim for ineffective assistance of counsel because
of counsel's failure to challenge Joseph's credibility at his
criminal trial based on the financial interest theory when the

basis for holding his trial counsel to a higher standard than he and his present counsel could meet.[8]

The prejudice prong of the ineffective assistance claim is even more difficult to satisfy.  To be successful, Bader must show that but for counsel's failure to impeach Joseph's credibility by showing that he had an interest in the civil suit there is a reasonable probability that Bader would not have been convicted.  Based on the record here, Bader cannot show prejudice.  Because Bader has not shown that he could meet either element of his ineffective assistance of counsel claim, the claim appears to be meritless.

Bader has not demonstrated that he is entitled to a stay of this proceeding while he pursues the ineffective assistance claim in state court.  Therefore, his motion is denied.

## Conclusion

For the foregoing reasons, the petitioner's motion for an evidentiary hearing (document no. 194) is denied.  The petitioner's motion to excuse filing a memorandum of law with his

---

Warden argued that the issue was not based on new evidence and had been obvious since before the criminal trial began.

[8]Bader was a lawyer and practiced law in New Hampshire until his arrest in 1997.

objection to the respondent's motion for summary judgment
(document no. 202) is granted.  The respondent's motion for
summary judgment (document no. 200) is granted.  The petitioner's
motion for a stay (document no. 204) is denied.

    All of the petitioner's claims have been resolved in favor
of the Warden in orders issued on May 28, 2003 (document no. 75),
September 27, 2004 (document no. 164), and this order.
Therefore, the clerk of court shall enter judgment accordingly
and close the case.

    SO ORDERED.

                              _____
                              Joseph A. DiClerico, Jr.
                              United States District Judge

June 29, 2005

cc:  B. Michael Cormier, Esquire
     Neals-Erik W. Delker, Esquire
     Peter E. Papps, Esquire